# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CANDACE E. HERREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:16-cv-01308-LSC |
| | ) | |
| LA PETITE ACADEMY, INC., | ) | 2:17-cv-00739-LSC |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

### I.   INTRODUCTION

Plaintiff, Candace Herren ("Herren"), who is white and was born in 1965, brings this action against her former employer Defendant, La Petite Academy, Inc. ("La Petite"). On August 10, 2016, Herren filed suit against La Petite, alleging that her termination violated the Family and Medical Leave Act ("FMLA"). On May 5, 2017, Herren filed another suit against La Petite, asserting claims under various other federal statutes as well as Alabama state law. The two cases were consolidated on May 26, 2017.

Presently before the Court are La Petite's motion for summary judgment (doc. 73) and motion to strike (doc. 93).[1] For the reasons stated below, La Petite's motion for summary judgment (doc. 73) is due to be granted and the motion to strike (doc. 93) is due to be denied in part and terminated as moot in part.

## II.  BACKGROUND[2]

La Petite operates educational childcare centers throughout Alabama. All childcare centers in Alabama are licensed and regulated by the Alabama Department of Human Resources, Child Care Services Division ("DHR"), which is responsible for monitoring childcare centers for compliance with

---

[1]     References to "Doc(s)__" are to the document number of the pleadings, motions, and other materials in the court file as compiled and designated on the docket sheet by the Clerk of the Court. Unless otherwise noted, the document number cited corresponds with the docket sheet in the lead case, 2:16-cv-01308-LSC.

[2]     The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted). These facts are taken from the parties' "Undisputed Material Facts" sections of the parties' pleadings in support of and opposing summary judgment. While the parties dispute the relevance and materiality of some of the facts contained herein, they agree that they are undisputed, unless otherwise noted. The Court views the facts in the light most favorable to the non-moving party. *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

DHR's Minimum Standards for Day Care Centers and Nighttime Centers ("Minimum Standards"). DHR periodically makes childcare licensing visits to childcare centers, such as those operated by La Petite. Facilities not in compliance with DHR's Minimum Standards may be issued what is known as an Alabama Department of Human Resources Child Care Minimum Standards Deficiency Report ("DHR Deficiency Report").

Herren was employed with La Petite for thirty years. In 2013, Herren began working as the director for La Petite's Grayson Valley center. Previously, she had served for a time as the director at La Petite's Montclair facility. In March 2015, Herren completed Family and Medical Leave Act ("FMLA") paperwork so she could take time off work to receive chemotherapy treatments for ulcerative colitis.[3] La Petite's Benefits Department approved Herren's intermittent leave request for the period of March 17, 2015 to March 17, 2016. During this time period, Herren reported directly to PJ Kimball ("Kimball"), La Petite's former district manager. In March 2016, Herren began reporting to Felicia Gist ("Gist"), who served as interim district manager until August 2016. Herren complained to multiple members of La Petite's management about Gist's treatment of her. Herren claims that Gist, who is

---

[3]     Although not indicated in her FMLA paperwork, Herren states that she had also been diagnosed with Crohn's disease. (*See* Doc. 92-1 at 3.)

African American, undermined Herren's authority by directing questions about the Grayson Valley center to Herren's African American assistant director Tiffany Hamilton ("Hamilton"). Herren also testified that Gist would ask her why she needed to go for chemotherapy treatments and why she could not come back to work the same day. According to Herren, although she would work a partial day before going to her chemotherapy treatments, Gist would mark her absent for the full eight hour work day.

On December 17, 2015, an infant at La Petite's Brookwood center became unresponsive during naptime and later died. Following the Brookwood infant death, La Petite sent Cindy Lehnhoff ("Lehnhoff"), Divisional VP of Operations, Southeast Division, and other individuals from its corporate headquarters to visit the Alabama centers. In addition, Kimball sent the Alabama directors a reminder about the DHR Minimum Standards with respect to sleeping infant safety. In January 2016, La Petite developed a training program for its Alabama center directors to address compliance with DHR's requirements. Also, in January 2016, La Petite terminated the employment of Tyesha Hill, the Brookwood center director after DHR issued several deficiency reports following the infant's death.

On January 14, 2016, DHR issued Herren's Grayson Valley center a deficiency report, which identified four deficiencies. These deficiencies

included a finding that a tarp on a sand table in the playground area created a hazard. On January 21, 2016, DHR issued Grayson Valley another deficiency report, which identified fourteen deficiencies. This deficiency report identified several additional hazards at the Grayson Valley facility, which included hazardous substances not being kept under lock and key and the door leading outside to the playground not being secured. Herren admits that her facility received these deficiency reports. However, she contends that, following the Brookwood incident, DHR was visiting all centers in Alabama and submitting multiple pages of deficiencies for each facility.

On February 5, 2016, DHR found no deficiencies at Grayson Valley and recommended that the center's license be renewed. On February 29, 2016, La Petite issued Herren a disciplinary action and performance improvement plan, which addressed the DHR deficiencies found in January 2016. The plan, which Herren signed, stated that: "I . . . understand that failure to maintain or sustain acceptable levels of performance, behavior, or conduct may result in further action, up to and including separation of employment." (*See* Doc. 72-28 at 2.) Herren was also told to write-up Hamilton for the DHR deficiencies. On April 5, 2016, DHR again issued Herren a deficiency report for Grayson Valley, which identified eight deficiencies. One of these deficiencies was due to a baby falling asleep in a

bouncer seat. Two days later, on April 7, 2016, DHR issued Grayson Valley another deficiency report, which noted five deficiencies. La Petite placed Herren on administrative leave on April 26, 2016. The next day, on April 27, 2016, Herren submitted FMLA paperwork and requested FMLA leave from April 27, 2016 to June 24, 2016. That same day, La Petite's Benefits Department emailed Gist about Herren's new leave request.

Rhonda Kirk ("Kirk") is the La Petite employee who conducted an investigation into Herren's employment. During the course of this investigation, Kirk learned that Herren had been on intermittent leave from March 2015 to March 2016 and included this information in her notes. Kirk's handwritten notes about Herren's termination also have the number 51, Herren's age at the time of her termination, circled in the upper-left hand corner. Moreover, Herren testified that sometime after she submitted her April 27, 2016 FMLA leave request she discussed this request with Kirk. On April 28, 2016, after visiting the Grayson Valley center, Kirk made the recommendation that Herren be terminated and that it be documented that Hamilton exercised poor judgment during the DHR visits. This recommendation includes a reference to a prior recommendation that Herren be documented on a performance improvement plan and be issued a final written warning. However, Herren was never issued a final written warning,

and on May 2, 2016, La Petite terminated Herren's employment during a phone call between Herren, Lehnhoff, and Kirk.

According to several parents of Grayson Valley students, Gist explained Herren's absence by stating that she was "sick" and had to leave work "due to medical issues." (*See* Doc. 72-9 at 4–5.) Herren testified that when she contacted one parent about a potential job opportunity as a sitter that the parent responded by stating that she thought Herren was too sick to work. However, Herren admits that she ultimately decided not to formally apply for the sitter position. Following Herren's termination, Valerie Pugh, who is African American and was born in 1969, was named temporary acting director at Grayson Valley. On August 16, 2016, La Petite hired Iris Adams, who is also African American and was born in 1972, to serve as Grayson Valley's permanent director.

## III. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[4] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the

---

[4]    A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860

(11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV. PRELIMINARY MATTERS

The discovery disputes in this case have, at times, significantly strained judicial resources. Thus, it comes as no surprise to the Court that both parties have raised substantial challenges to the other side's briefing of this summary judgment motion. Herren seeks to strike La Petite's initial brief's statement of facts for failure to comply with the Court's Uniform Initial Order. (*See* Doc. 69 in 2:17-cv-00739.) La Petite seeks to exclude from evidence the deposition testimony of La Petite employees in the separate case of *Tammy Johnson v. La Petite Academy, et al.*, No. 5:17-cv-1202-MHH ("*Johnson*"). (*See* Doc. 93.) Both sides also ask that the Court not consider

various evidentiary submissions that they say were not disclosed during discovery. The Court will address each in turn.

Herren states that she could not effectively respond to La Petite's brief in support of its summary judgment motion because of the way in which La Petite organized its statement of facts. La Petite's factual statement consists of 25 separately-numbered paragraphs, and each paragraph contains specific citations to the portion of La Petite's evidentiary submissions that support those factual statements. Relying on this Court's Uniform Initial Order (doc. 13), Herren contends that La Petite impermissibly provided its facts in a narrative format by bunching several different statements together in one paragraph. Herren also takes issue with La Petite's use of twenty-seven fact intensive footnotes within its statement of facts.

The Court agrees with Herren that La Petite's liberal use of footnotes throughout its statement of facts appears to have been done in an attempt to circumvent this Court's order that La Petite's brief in support of its summary judgment motion not exceed forty-five pages. (*See* Doc. 68.) The Court, however, declines to strike this portion of La Petite's brief. Herren has organized her response to La Petite's statement of facts by pointing to the particular portions she disputes. This mitigates any prejudice caused by La

Petite's formatting. Therefore, the Court will not strike La Petite's statement of facts.

La Petite argues that the *Johnson* deposition testimony should be struck because it constitutes inadmissible hearsay. According to La Petite, because former testimony may not be presented as evidence at trial unless the requirements of Federal Rule of Evidence 804(b)(1) have been satisfied, the Court cannot consider deposition testimony from a different case when ruling on this motion for summary judgment. This argument, however, misunderstands the summary judgment standard. While a party may not use inadmissible hearsay to defeat summary judgment, courts can consider statements that may be reduced to an admissible form at trial. *See Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996). Here, the *Johnson* deposition testimony may be reduced to an admissible form. While Rule 804(b)(1) would likely preclude Herren from reading the *Johnson* deposition testimony into the record at trial, the La Petite employees who provided that testimony could be called as witnesses. In this way, the *Johnson* testimony is no different than the evidence provided by the parties in the form of sworn affidavits or testimony from depositions taken in this case. Therefore, the Court will not strike these exhibits from the record.

Alternatively, La Petite asks the Court to disregard any evidentiary submissions from *Johnson* when ruling on its motion for summary judgment, arguing these exhibits are irrelevant and immaterial to this case. Because the Court has used its discretion in making findings of fact in the development of the record for the purposes of summary judgment, this section of La Petite's motion to strike is moot. To the extent that Herren has submitted evidence that is irrelevant to her claims, those evidentiary submissions have been disregarded.

Finally, both Herren and La Petite argue that certain evidentiary submissions should be excluded because of the other party's failure to disclose that evidence during discovery. The Federal Rules of Civil Procedure require a party to disclose the names of individuals likely to have discoverable information that will be used to support a claim or defense. Fed. R. Civ. P. 26(a)(1)(A). These initial disclosures, plus responses to interrogatories, requests for production, or requests for admission, must be supplemented "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as

required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

La Petite contends that exhibits 16–23 and exhibits 25–27 attached to Herren's Response in Opposition should be excluded because Herren did not identify these exhibits during discovery. The Court finds that this argument lacks merit. Herren did identify in her supplemental Rule 26 disclosures that she would likely use the deposition transcripts from *Johnson* of Tammy Johnson, Lenhoff, Brandy Werle, and Gist. (*See* Doc. 93-1 at 10.) It appears to the Court that all of the exhibits objected to by La Petite were exhibits presented at these depositions. Thus, La Petite had sufficient notice that the information contained within these exhibits might be used to support Herren's claims, and Herren did not violate Rule 37(c)(1) by submitting them into evidence. Nonetheless, as mentioned above, to the extent that these exhibits are irrelevant to Herren's claims, the Court has disregarded them.

Herren seeks to exclude from evidence: (1) information about the termination of Adrienne Mixon, an African American La Petite director, and (2) Lehnhoff's testimony that three La Petite executives provided input on Herren's termination. This argument is also meritless. While this information was not revealed in La Petite's initial interrogatory responses, it was later

disclosed in depositions taken in this case. (*See* Doc. 72-21 at 39; Doc. 72-10 at 4.) Thus, Herren had notice that this information may be used in support of La Petite's summary judgment motion. And La Petite did not violate the disclosure rules by using this information to support its motion. *See* Fed. R. Civ. P. 26(e)(1)(A) (supplemental disclosures only required if the "corrective information has not otherwise been made known to the other parties during the discovery process").

## V. DISCUSSION

Herren brings three types of claims against La Petite. First, she claims that La Petite interfered with her FMLA leave and terminated her employment in retaliation for applying for leave under the FMLA. Second, she claims that La Petite subjected her to discrimination on the basis of her race, age, and disability. Third, Herren claims that the actions of La Petite and its employees constituted various torts under Alabama law. La Petite has moved for summary judgment on all claims.[5]

---

[5] Herren has agreed to voluntarily dismiss her intentional interference with contractual relations claim. (*See* Doc. 79 at 39.) Therefore, La Petite's motion for summary judgment on this claim is due to be granted.

**A.    FMLA**

The FMLA allows qualifying employees to take up to twelve weeks of unpaid leave during any twelve month period to deal with a "serious health condition." See 29 U.S.C. § 2612(a)(1)(D). It is unlawful for an employer to either interfere with an employee's right to take leave for a protected reason or to discriminate against an employee for doing so. *See* 29 U.S.C. § 2615(a)(1), (2). "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA] . . . and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (internal citations omitted).

1.    Retaliation Claim

An FMLA retaliation claim requires the employee to demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for exercising an FMLA right. *Id.* at 1207. "In other words, a plaintiff bringing a retaliation claim" must show "that [her] employer's actions 'were motivated by an impermissible retaliatory or discriminatory

animus.'" *Id.* (quoting *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)). Where, as here, there is no direct evidence of retaliation, the Eleventh Circuit applies the *McDonnell Douglas* burden shifting framework to FMLA retaliation claims. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). Under this framework, the plaintiff initially bears the burden of establishing a *prima facie* case of discrimination by showing that: "(1) [s]he engaged in statutorily protected activity; (2) [s]he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). If the plaintiff's burden is met, the defendant must then proffer a legitimate reason for the action, at which point the plaintiff must show that those reasons are pretextual. *Id.*

La Petite does not dispute that applying for FMLA leave is a protected activity or that its termination of Herren's employment constitutes an adverse employment action. La Petite does, however, argue that Herren cannot demonstrate a causal connection between her request for leave and her termination. At the *prima facie* stage, "[c]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient

circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *See id.* at 1298 (quoting *Brungart*, 231 F.3d at 799).

Because Herren submitted her renewed application for FMLA leave on April 27, 2016 and La Petite terminated Herren's employment less than a week later, on May 2, 2016, the Court has no trouble concluding that there was a close temporal proximity between the two events. "Temporal proximity alone, however, is not sufficient to establish a causal connection when there is unrebutted evidence that the decision maker was not aware of the protected activity." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).

La Petite has asserted that Lehnhoff was the final decision maker as to Herren's termination. In her deposition, Lehnhoff testified that she was unaware of Herren's April 27, 2016 leave request. However, Lehnhoff did testify that "at one point in time someone had mentioned to me that [Herren] was taking . . . chemo" and that she had "missed a meeting or something." (*See* Doc. 72-10 at 7.) Lehnhoff went on to state that "she didn't really inquire as to what process [Herren] was using . . . because there's so many versions of FMLA, intermittent and . . . actual leave." (*See id.*) According to Herren, this creates a genuine issue of material fact as to whether Lehnhoff knew of Herren's leave request. The Court disagrees. Even viewing these statements

in the light most favorable to Herren, they provide no indication that Lehnhoff was aware of Herren's April 27, 2016 leave request. Instead, at most, these comments suggest that at some point during Herren's tenure as the Grayson Valley director Lehnhoff was informed that Herren had to take time off from work to undergo chemotherapy treatments. Thus, Herren has failed to show that Lehnhoff had knowledge of the protected conduct she says supports the causation element of her *prima facie* case.[6]

Herren has, however, presented evidence that Gist and Kirk were aware of Herren's FMLA leave request. Herren testified that she talked with Kirk about her FMLA leave request on either April 27th, 28th, or 29th. The record also contains evidence that, on the morning of April 27, 2016, La Petite's Benefits Department emailed Gist that she needed to provide Herren with a new FMLA leave of absence packet. But "knowledge on the part of persons other than a decision maker cannot be imputed from other supervisors to the decision maker for purposes of an FMLA retaliation claim." *Krutzig*, 602 F.3d at 1235. While there is evidence that Kirk conducted the

---

[6] Herren has made no argument that the temporal proximity between her March 2015 to March 2016 intermittent leave and her termination was sufficient to establish causation. The Court is under no duty to make this argument for her. *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments . . . ." (en banc) (quotations and citations omitted)).

investigation into Herren's employment, made the April 28, 2016 termination recommendation, and was on the call when Lehnhoff terminated Herren, Herren does not dispute La Petite's assertion that Lehnhoff was the final decision maker with respect to her termination. Moreover, although Kirk asked Herren if she would rather have Lehnhoff than Gist on the termination phone call, there is no evidence that Gist was involved in making the decision to terminate Herren's employment. Therefore, Herren has failed to show decision maker knowledge of her FMLA leave request and thus does not make out a *prima facie* case of FMLA retaliation.

Assuming, *arguendo*, that Herren was able to state a *prima facie* case of FMLA retaliation, the burden of production would then shift to La Petite to produce a legitimate nondiscriminatory reason for its actions. Here, La Petite states it terminated Herren's employment due to the multiple DHR deficiency reports, her failure to provide a safe environment for children, violation of company policies, failure to satisfy her job duties and responsibilities, and failure to improve her performance after receiving a written performance improvement plan. (*See* Doc. 74 at 47.) La Petite meets its burden of production with these proffered nondiscriminatory reasons for Herren's termination. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) ("[T]he employer's burden is merely one of production; it

'need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

Thus, the burden shifts back to Herren to show that La Petite's proffered reasons are mere pretext for unlawful retaliation. "To show pretext, a plaintiff must 'come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reason for the adverse employment decision." *Hurlbert*, 439 F.3d at 1298 (quoting *Chapman*, 229 F.3d at 1024). One way in which Herren may establish pretext is by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [La Petite's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538. (quoting *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d. Cir. 1996) (en banc)).

Herren offers three reasons why La Petite's explanation for her firing should be considered pretextual. First, Herren argues that La Petite's claim that it terminated her because of the DHR deficiency reports is "riddled with

inconsistencies." (*See* Doc. 79 at 27–28.) Herren states that this is evidenced by the fact that all of the La Petite facilities in Alabama were receiving scrutiny following the infant death at the Brookwood facility. As Herren points out, Kimball testified that La Petite centers throughout Alabama were receiving pages of deficiencies just like Grayson Valley. (*See* Doc. 72-29 at 60.) Although Herren vaguely asserts that the directors of other La Petite centers received deficiency reports and were not written up, she does not back this assertion up with a citation to the record. The Court assumes that Herren is referring to the fact that Kimball testified that Herren was the only director she personally wrote-up for receiving DHR deficiencies. (*See id.*)

But, even viewing this evidence in the light most favorable to Herren, it does not demonstrate that other directors did not receive discipline for the DHR deficiency reports from other La Petite supervisors. In fact, La Petite has presented evidence that at least two other directors were terminated for receiving multiple deficiency reports. Moreover, this argument fails to address the fact that one of the reasons given for Herren's termination was that she failed to improve her performance after receiving Kimball's write-up. Thus, this argument fails to show pretext. *See Kragor v. Pharmaceuticals Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012) ("In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable

factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." (quoting *Chapman*, 229 F.3d at 1037).

Second, Herren makes the related argument that La Petite treated other employees, who did not require FMLA leave and were African American, more favorably because these individuals were not disciplined as a result of the DHR deficiency reports. Specifically, Herren points to La Petite's treatment of Hill, Hamilton, and Gist as providing support for her contention that her termination was pretextual. Hill was the director of the Brookwood facility when the infant passed away after becoming unresponsive during naptime. Following this incident, DHR issued the Brookwood facility several deficiency reports in December 2015 and January 2016. Herren argues that Hill was treated more favorably than she was because after the infant died Hill was marked eligible for rehire and interviewed for another director position with Gist. Herren also contends that La Petite treated Hamilton and Gist more favorably than it treated her because they were not disciplined after DHR issued deficiencies at the Grayson Valley facility.

A comparator's disparate treatment can be used as evidence of pretext. *See Lewis v. City of Union City,* 918 F.3d 1213, 1223 n.9 (11th Cir.

2019) (en banc) (noting that comparator evidence may be relevant to pretext analysis); *see also Ebersole v. Nolo Nordisk, Inc.*, 758 F.3d 917, 925–26 (8th Cir. 2014) (using comparator evidence to analyze pretext in FMLA retaliation case). When evaluating allegations of disparate treatment, the comparator and the plaintiff must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226. As the Eleventh Circuit has recently explained, ordinarily a similarly situated comparator: (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff;" (2) "will have been subject to the same employment policy, guideline, or rule as the plaintiff;" (3) "will . . . have been under the jurisdiction of the same supervisor as the plaintiff;" and (4) "will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28 (cleaned up).

Here, Herren's comparator argument fails to establish pretext. Hill is an inappropriate comparator because there is no evidence that La Petite treated her more favorably than Herren. In January 2016, following the Brookwood infant death and DHR deficiency reports, La Petite terminated Hill's employment. While Herren states that La Petite marked Hill eligible for rehire and that she interviewed with Gist for another director position, she has cited the Court to no portion of the record that supports this assertion. After thorough review of the portions of the evidentiary record cited by the

parties, the Court has found no evidence that Hill was ever marked eligible for rehire. Thus, Herren has failed to show that she was treated less favorably than Hill. Even if the Court were to assume that Hill was marked eligible for rehire, Herren would still have failed to show that she and Hill were "similarly situated in all relevant respects." Herren has not presented evidence of who decided to mark Hill eligible for rehire, much less that this person had any involvement in Herren's termination. *See Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable discrimination claim."). In fact, Herren disputes La Petite's assertion that Lehnhoff was the one who terminated Hill's employment. Moreover, the only evidence before the Court of Hill's employment and disciplinary history comes from the Brookwood incident and the DHR deficiency reports that followed. Without more information regarding Hill's employment history with La Petite, the Court cannot determine whether she constitutes an adequate comparator.

Nor has Herren shown that Hamilton and Gist are adequate comparators. Herren complains that Hamilton was not disciplined for the same deficiencies that led to her suspension. On February 29, 2016, both Herren and Hamilton received write-ups for the January DHR deficiencies.

After the April DHR deficiency reports, only Herren was placed on a leave of absence and terminated. However, Herren's April 28, 2016 termination recommendation included the recommendation that La Petite "[d]ocument that [Hamilton] used a lack of judgment by not following through to ensure that the infant room teachers immediately removed" the sleeping baby from the bouncer. (*See* Doc. 72-8 at 75.) Because Hamilton testified that she never received such documentation, Herren contends that there is a question of fact as to whether Hamilton was ever disciplined for this incident.

But Herren has failed to show how she and Hamilton were similarly situated. Hamilton worked under Herren as her assistant director. Although this difference in job title is not dispositive, *see Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999), it does provide an explanation for why Herren would be disciplined more harshly than Hamilton. This is especially true due to the fact that Herren, and not Hamilton, was the person in charge of the Grayson Valley center when DHR issued the January and early April DHR deficiency reports. Additionally, the record reveals that Hamilton and Herren's employment history with La Petite differed. It is undisputed that Herren was employed with La Petite for thirty years and served as the Grayson Valley director for the last four years of her employment. Herren had previously served as the director at La Petite's

Montclair facility from 1990 to 1994. Although it is not entirely clear when Hamilton became Herren's assistant director, the record indicates that, at the earliest, this occurred in either late 2015 or early 2016. Thus, at most, Hamilton had worked as an assistant director for only a few months before DHR issued the Grayson Valley deficiency reports. This difference in experience further demonstrates that Hamilton is not a valid comparator. *See Lewis*, 918 F.3d at 1228 (citing with approval Sixth Circuit opinion which held that no reasonable jury could find a first year manager the valid comparator of a plaintiff with over ten years managerial experience).

Herren also points out that neither Gist nor Hamilton were disciplined when DHR issued Grayson Valley deficiency reports while Herren was on administrative leave. As stated above, the differences between Herren and Hamilton's job responsibilities and experience demonstrate that Hamilton is not a valid comparator. Herren has also failed to carry her burden to show how Gist's conduct was sufficiently similar to her own. First, although, viewing the evidence in the light most favorable to Herren, Gist had assumed responsibility for the Grayson Valley facility during this time period, she was not present during the DHR visit that led to these deficiency reports being issued. Next, Herren has failed to show that she and Gist shared the same employment and disciplinary history. Prior to Herren being placed on

administrative leave, Grayson Valley received four deficiency reports during January and April of 2016. Only after DHR issued the second deficiency report did Herren receive a written warning. And La Petite waited until the fourth deficiency report was issued to place Herren on administrative leave and eventually terminate her employment. Moreover, La Petite has presented evidence that Herren was not merely fired for receiving the deficiency reports but also for failing to improve her performance after La Petite issued the written warning. Herren has presented no evidence that Gist received similar discipline prior to DHR issuing the April 28, 2016 deficiency report. Thus, the Court finds that Gist is not an adequate comparator.[7]

Finally, Herren states that there is circumstantial evidence that her April 27, 2016 leave request caused Kirk to change her proposed disciplinary recommendation. In support of this contention, Herren points out that Kirk changed Herren's proposed discipline of a final written warning to

---

[7] Herren has not advanced any developed argument that any other La Petite employee constitutes an adequate comparator. Although she mentions in her statement of additional undisputed facts instances where Marlene Watson and Pugh, both African American directors, were not disciplined for leaving children unattended on the playground, she does not mention these individuals as comparators in the argument portion of her brief. Moreover, Herren has not presented evidence that these employees shared her employment or disciplinary history or were governed by the same decision-maker.

termination after Herren submitted her leave request and Kirk became aware that Herren had been taking intermittent leave.

Close temporal proximity between protected activity and an adverse employment decision "is evidence of pretext, though probably insufficient to establish pretext by itself." *Hurlbert*, 439 F.3d at 1298. As Kirk changed Herren's proposed discipline merely one day after Herren submitted her renewed leave request and three days after she contacted La Petite's Benefits Department about Herren's FMLA status, the temporal proximity between the two events is indeed very close. However, this change in recommendation also occurred after Kirk went to the Grayson Valley facility and interviewed the employees there about the circumstances surrounding the DHR deficiencies. Thus, standing-alone, the close temporal proximity between Herren's leave request and Kirk's change in recommendation is insufficient to establish pretext. And therefore, La Petite is entitled to summary judgment on Herren's FMLA retaliation claim.

2.    Interference Claim

Unlike with retaliation claims, an FMLA interference claim only requires the employee to demonstrate, by a preponderance of the evidence, the denial of an FMLA benefit to which she was entitled and that she "has been prejudiced by the violation in some way." *Evans v. Books-A-Million*, 762 F.3d

1288, 1295 (11th Cir. 2014) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). The employee need not allege that [her] employer intended to deny the benefit—'the employer's motives are irrelevant.'" *Hurlbert*, 439 F.3d at 1293. (quoting *Strickland*, 239 F.3d at 1208).

Herren's interference claim is based on her assertion that her termination prevented her from being able to take the FMLA leave she requested on April 27, 2016. The FMLA's notice provision states that when an employee's FMLA leave is "foreseeable based on . . . planned medical treatment" the employee must give her employer "at least 30 days advance notice before FMLA leave is to begin," if practicable. *See* 29 C.F.R. § 825.302. As La Petite notes, because it fired Herren on May 2, 2016, Herren's employment was terminated before La Petite was legally obligated to approve her April 27, 2016 leave request. This, however, does not foreclose Herren's interference claim. *See Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1274–75 (11th Cir. 2012) (holding that FMLA interference claim was cognizable even though plaintiff was terminated before she could take requested maternity leave); *see also id.* at 1274 ("It would be illogical to interpret the [FMLA's] notice requirement in a way that requires employees to disclose requests for leave which would, in turn,

expose them to retaliation, or interference, for which they have no remedy."

(quoting *Reynolds v. Inter-Indus. Conf. on Auto Collision Repair*, 594 F.

Supp. 2d 925, 928 (N.D. Ill. 2009)).

But "the right to commence FMLA leave is not absolute." *Krutzig*, 602

F.3d at 1236. "[A]n employee can be dismissed, preventing her from

exercising her right to commence FMLA leave, without thereby violating the

FMLA, if the employee would have been dismissed regardless of any request

for FMLA leave." *Id.* Thus, if Herren was terminated for reasons unrelated to

her FMLA leave request, her interference claim fails as a matter of law. As

discussed above, the record demonstrates that Herren was terminated for

reasons unrelated to her April 27, 2016 leave request. Therefore, La Petite

is entitled to summary judgment on Herren's FMLA interference claim.

## B.    Race, Age, and Disability Discrimination[8]

---

[8]    "Discrimination claims brought under Title VII . . . are typically categorized as either mixed-motive or single-motive claims." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). Here, Herren does not argue that she is bringing her claims under a "mixed-motive" theory of liability nor does she cite the Court to the relevant mixed-motive case law. Herren does state, in a footnote, that "'[m]otivating factor' is the proper test for determining whether or not an improper motive caused an adverse action under Title VII." (*See* Doc. 79 at 30 n.2.) To the extent that Herren is attempting to use this footnote to advance a mixed-motive claim, the Court finds that it provides both La Petite and the Court with insufficient notice that she is bringing her race discrimination claim under a mixed-motive theory of liability. *See Keaton v. Cobb Cty., Ga.*, No. 08-11220, 2009 WL 212097, at *10 (11th Cir. 2009) ("Our case law regarding waiver suggests that [plaintiff's] single, passing reference to a 'mixed motive' theory in a footnote contained in her response to [defendant's] objections to the magistrate's R & R was not sufficient to preserve the issue for appeal."). Thus, the Court analyzes Herren's race discrimination claim as a single-motive claim.

Herren also alleges that her termination was based on her race, age, and/or disability in violation of Title VII, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), the Alabama Age Discrimination in Employment Act ("AADEA"), and the Americans with Disabilities Act ("ADA").[9] As with FMLA retaliation claims, the Eleventh Circuit applies the *McDonnell Douglas* burden shifting framework in single-motive race, age, or disability discrimination cases where there is no direct evidence of discrimination. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007); *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1345 (11th Cir. 2000) (applying *McDonnell Douglas* to ADEA claim); *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000) (applying *McDonnell Douglas* to ADA disability discrimination claim).[10]

---

[9]     Herren has failed to respond to La Petite's motion for summary judgment on her claims of hostile work environment and retaliation under these statutes. Thus, the Court deems those claims to be abandoned. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") And La Petite is entitled to summary judgment on those claims.

[10]     In a footnote, Herren argues that the fact that juries are not to be instructed on the *McDonnell Douglas* framework "suggests that it is not necessary to meet the *McDonnell Douglas* test in order to defeat a motion for summary judgment." (*See* Doc. 79 at 30 n.3.) Herren is correct in that a "plaintiff will always survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional

1.    Race Discrimination

Because Title VII and § 1981 "have the same requirements of proof and use the same analytical framework," this Court addresses Herren's race discrimination claims only as to Title VII "with the understanding that the analysis applies equally to the § 1981 claim[s] as well." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). A plaintiff establishes a *prima facie* case of race discrimination by demonstrating that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class or was treated less favorably than a similarly situated employee outside of her class. *See Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). La Petite argues that Herren cannot establish a *prima facie* case of race discrimination because she has failed to identify any similarly situated African American employees who were treated more favorably than she

---

discrimination by the decisionmaker.'" *Id.* (footnote omitted) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). However, Herren does not explain which facts could be used to establish a "convincing mosaic." The Court declines to make this argument for her. *See Hill v. Branch Banking & Tr. Co.*, 264 F. Supp. 3d 1247, 1263 (N.D. Ala. 2017) ("[Plaintiff] recites the relevant case law on how a plaintiff may establish a 'convincing mosaic,' but does not explain what facts would compose it in this case. The court cannot construct the picture for her.").

was.[11] This argument, however, ignores the fact that Herren has presented evidence that she was replaced by someone outside of her protected class. It is undisputed that after Herren's termination Valerie Pugh, an African American, was named Grayson Valley's temporary acting director. A few months later, in August 2016, La Petite named Iris Adams, who is also African American, as the permanent director at Grayson Valley. Because both Pugh and Adams are African American, Herren has shown that she was replaced by an individual outside of her racial classification. Therefore, Herren has made out a *prima facie* case of race discrimination, and the Court need not consider whether Herren could make out a *prima facie* case on the alternative ground that she was treated less favorably than similarly situated African American employees.

Nonetheless, Herren's race discrimination claims fail because she has failed to establish pretext. In support of her race discrimination claims, Herren asserts that the same facts that establish pretext with respect to her FMLA retaliation claim establish pretext as to her race discrimination claims. Relevant to Herren's race discrimination claims is the fact that Hill, Hamilton,

---

[11]     Although La Petite does not concede that Herren was qualified for her director position, it agrees that it is more appropriate to analyze issues surrounding an employee's qualifications in the later stages of the *McDonnell Douglas* framework. (*See* Doc. 74 at 43 n.37.)

and Gist, Herren's proffered comparators, are all African American. However, for the reasons discussed in section V. A. 1., *supra*, these individuals are inadequate comparators and thus evidence of their treatment does not support a finding of pretext. Moreover, as stated above, the other evidence Herren has pointed to is insufficient to show pretext. Therefore, La Petite's motion for summary judgment on Herren's race discrimination claims is due to be granted.

### 2. Age Discrimination

To establish a *prima facie* case of age discrimination,[12] the plaintiff employee must demonstrate that: (1) she was a member of the protected group between the age of forty and seventy; (2) she was subjected to an adverse employment action; (3) a substantially younger person filled the position from which she was discharged; and (4) she was qualified to do the job from which she was discharged. *Liberman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). Here, La Petite argues that Herren cannot establish a *prima facie* case of age discrimination because she was not replaced by a substantially younger person. As La Petite points out, Pugh,

---

[12]    In their briefing, neither party addressed Herren's AADEA claim. However, a claim under the AADEA is analyzed under the same evidentiary framework as one made under the ADEA. *Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007). Therefore, the Court's analysis of Herren's age discrimination claim under the ADEA applies equally to her AADEA claim.

who was named Grayson Valley's temporary acting director, was only five years younger than Herren and Adams, Herren's ultimate replacement, was only seven years younger. However, the Eleventh Circuit has previously found that similar age differences satisfied the "substantially younger" replacement requirement. *See, e.g.*, *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (holding that plaintiff aged 42, who was replaced by employee aged 37, met the ADEA's "substantially younger" replacement requirement); *Carter v. DecisionOne Corp. Through C.T. Corp. Sys.*, 122 F.3d 997, 1003 (11th Cir. 1997) (per curiam) (holding that three year age difference qualified as "substantially younger"). Thus, viewing the evidence in the light most favorable to Herren, she has made out a *prima facie* case of age discrimination.

In support of her argument that her termination was pretext for age discrimination, Herren makes many of the same arguments that she made to support her FMLA retaliation and race discrimination claims. However, Herren also points to Kirk's handwritten notes regarding her termination, which had the number fifty-one circled in the upper left-hand corner. Because Herren was fifty-one-years old at the time of her termination, Herren states that this demonstrates that La Petite's managers discussed her age when making their decision to terminate her. The Court finds that this notation,

standing-alone, is insufficient to support a finding of pretext with respect to Herren's age discrimination claims. Thus, La Petite is entitled to summary judgment on these claims.

### 3. Disability Discrimination

"In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [she] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [her] disability." *Greenberg*, 498 F.3d at 1263 (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)). La Petite contends that Herren cannot meet the third prong because she has failed to show that La Petite terminated her because of her disability. The Court agrees. Here, Herren states that the same facts that support pretext on her FMLA retaliation claim demonstrate that her termination was because of her disability. For the reasons stated in section V. A. 1., *supra*, these facts fail to establish that Herren was discriminated against because of any protected characteristic, including the fact that she suffers from ulcerative colitis or Crohn's disease. Therefore, La Petite is entitled to summary judgment on Herren's disability discrimination claim.

### C. Invasion of Privacy

Under Alabama law,

invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.

*S.B. v. Saint James Sch.*, 959 So. 2d 72, 90 (Ala. 2006) (quoting *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997)).

Here, Herren asserts that La Petite can be found liable under the first three invasion of privacy categories. Herren contends that the following supports her invasion of privacy claim: (1) La Petite terminated her for false pretenses and claimed that her conduct endangered children; (2) La Petite spread rumors that she had endangered children; (3) La Petite informed parents that she was sick and had to leave La Petite due to medical issues; (4) Gist required Herren to work prior to leaving for medical treatment but would mark Herren absent for the full eight hour work day; and (5) Gist would pressure Herren about leaving for treatments and ask why she could not immediately return to work. (*See* Doc. 79 at 34–35.)

This evidence is insufficient to present a jury question under the wrongful intrusion prong of the tort of invasion of privacy. To succeed on a wrongful intrusion claim, there must be some evidence of the defendant prying or intruding into the plaintiff's private affairs. *See Busby v. Truswal*

*Sys. Corp.*, 551 So. 2d 322, 323 (Ala. 1989). The wrongful intrusion must have also been done in such a manner "as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *See id.* Even assuming La Petite made statements that Herren had endangered children or that she was ill, Herren has not presented any evidence that La Petite obtained this information by prying into her private affairs. Herren has also not demonstrated how Gist's requirement that she work prior to leaving for medical treatments constituted an intrusion into her private affairs. Thus, this evidence does not support Herren's wrongful intrusion claim.

Moreover, although it is arguable that Gist questioning Herren about her medical treatments constituted prying, the Court finds that Gist's behavior was not sufficiently outrageous or objectionable to state a wrongful intrusion claim. Herren testified that Gist would ask her why she "would go for chemo" and why she could not "come back the same day." (*See* Doc. 72-1 at 21.) There is no evidence that Gist asked Herren about personal and intimate details of her illness or made further inquiries into Herren's medical history. Indeed, these comments fall well short of the type of comments that have been held to support wrongful intrusion claims under Alabama law. *See, e.g.*, *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 826 (Ala. 1999) (noting that the Alabama Supreme Court had previously concluded

that "extensive egregious inquiries into one's sex life, coupled with intrusive and coercive sexual demands, constituted a wrongful intrusion."). And therefore, do not constitute a wrongful intrusion.

The second and third prong of the tort of invasion of privacy share common elements. Under the second prong, liability may be imposed against a defendant "who gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Johnston*, 706 So. 2d at 703 (quoting *Restatement (Second) of Torts* § 652D) (1977)). Likewise, a defendant may be held liable for publicizing information that places the plaintiff in a false light "if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003)).

Herren has cited no evidence to support her assertion that La Petite spread rumors that she had endangered children. Based on the Court's own review of the record, it appears that the only conversations related to the endangerment of children took place during the course of La Petite's

investigation of Herren. Therefore, Herren has failed to present any evidence that this information was ever made public, which is fatal to her claims under the second and third invasion of privacy categories.[13]

Herren has, however, presented evidence that Gist told parents of Grayson Valley students that Herren was sick and had to leave La Petite due to health reasons. But this evidence is insufficient to support Herren's invasion of privacy claim because Herren has failed to demonstrate how these statements would be "highly offensive to a reasonable person." As La Petite notes, there is no evidence that anyone associated with La Petite ever discussed Herren's specific medical condition, chemotherapy treatments, or medical history with parents. Instead, according to the parents, Gist told them that Herren was "sick" and had to leave work "due to medical issues." (*See* Doc. 72-9 at 4–5.) Herren did testify that when she contacted a parent of a Grayson Valley student about working for her that the parent indicated that she thought Herren was too sick to work. (*See* Doc. 72-1 at 61.) However, Herren admitted that she was not turned down for this job, but instead, decided to not formally apply for the position. (*See id.*) The Court concludes

---

[13]    As there is no evidence that Gist's requirement that Herren work prior to receiving medical treatment and questioning of Herren's failure to immediately return to work were ever made public, this evidence cannot be used to support Herren's invasion of privacy claims under the second and third invasion of privacy categories.

that these facts are not severe enough to make out a claim for invasion of privacy. *See Evans v. Books-A-Million*, No. 2:07-CV-2172-JEO, 2010 WL 11561447, at *20 (N.D. Ala. Apr. 6, 2010) (noting that "[t]he plaintiff's allegation that [the defendant] told the plaintiff's co-workers that she left [work] for 'family reasons,' falls miles short of the type of statement that 'would be highly offensive to a reasonable person.'"). Thus, La Petite is entitled to summary judgment on Herren's invasion of privacy claim.

### D.    Outrage

Herren's intentional infliction of emotional distress claim is based on her assertion that La Petite and Gist's conduct subjected her to age, disability, and race discrimination. Intentional infliction of emotional distress, also recognized as the tort of outrage, "requires extreme and outrageous conduct by a person who intentionally or recklessly causes severe emotional distress to another." *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1180 (Ala. 1995). To succeed on this claim, the plaintiff "must produce evidence that the defendant's conduct [was] 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* (quoting *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)). Outrage is a limited tort, and the Alabama Supreme Court has traditionally

recognized it in only three situations: "(1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011). (internal citations omitted). It does not permit actions for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012).

Even assuming Herren has shown that her alleged emotional distress was extreme, she has not presented evidence that she was subjected to the type of extreme conduct required to establish an outrage claim. Herren complains that Gist set her up for failure and states that she was singled-out for receiving DHR deficiency reports that were being received by all La Petite directors. She also alleges that the circumstances surrounding her firing were outrageous because La Petite terminated her before giving her a final written warning and she was not permitted to return from administrative leave during La Petite's investigation into her actions. Finally, Herren contends that she can succeed on her outrage claim because: (1) her termination was based on false pretenses; (2) she was wrongfully accused of endangering the lives of children; and (3) La Petite terminated her although it knew she was sick and needed a job. None of these actions, individually or collectively, amount to cognizable outrage under Alabama law. Instead, they are similar

to the "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that Alabama courts have consistently held do not constitute outrage. *See id.* at 52. Accordingly, even viewing the evidence in the light most favorable to Herren, La Petite is entitled to summary judgment on Herren's intentional infliction of emotional distress claim.[14]

### E. Negligent and Wanton Hiring, Supervision, Training, and Retention

Herren claims that La Petite is liable for negligent and wanton hiring, training, supervision, and retention of Gist, Kirk, and other La Petite employees who she alleges subjected her to harassment on the basis of her race, age, and disability. Under Alabama law, to succeed on a claim of negligent and wanton supervision,[15] a plaintiff must satisfy three elements. The first element requires a showing that the employee committed a tort recognized under Alabama law. *See Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999). Second, the plaintiff must show that the

---

[14]    La Petite also argues that it cannot be held liable for Herren's invasion of privacy and intentional infliction of emotional distress claims because Herren has not presented evidence that it ratified the acts underlying those claims. Because the Court finds that these claims are due to be dismissed for other reasons, it need not consider whether La Petite is entitled to summary judgment on this alternative ground.

[15]    The torts of negligent and wanton hiring, supervision, training, and retention all share common elements. *See Shuler v. Ingram & Assocs.*, 710 F. Supp. 2d 1213, 1228 (N.D. Ala. 2010). Thus, for ease of reference, the Court will refer to all of these claims under the collective term negligent supervision.

employer had either actual or constructive notice of its employee's conduct. *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001). This second element can be shown through the employer's knowledge of its employee's incompetence or unfitness for the position. *See Gilmer v. Crestview Mem'l Funeral Home, Inc.*, 35 So. 3d 585, 596 (Ala. 2009) ("To prove a claim of negligent supervision, a plaintiff must show that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent." (citing *Armstrong*, 817 So. 2d at 682)). For the third and final element, the plaintiff must show that the employer failed to adequately respond to this notice. *Armstrong*, 817 So. 2d at 682–83; *see Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009).

Herren's negligent supervision claim fails because she has not established that the conduct of La Petite's employees constituted a tort recognized under Alabama law. As every federal district court in Alabama has held, violations of federal employment discrimination laws cannot supply the underlying tort for a negligent supervision claim. *See McCaulley v. Harvard Drug Grp., LLC*, 992 F. Supp. 2d 1192, 1199 (N.D. Ala. 2014) (granting motion to dismiss negligent supervision claim where plaintiff alleged race discrimination supplied underlying tort); *Guy v. Ala. Power Co.*,

No. 2:13cv8-MHT, 2013 WL 3929858, at *3 (M.D. Ala. July 29, 2013) (concluding that allegations of discrimination based on military service were insufficient to support a claim of negligent supervision); *Rabb v. Ga. Pacific, LLC*, No. CA 09-0420-C, 2010 WL 2985575, at *16 (S.D. Ala. July 26, 2010) (finding that plaintiff could not maintain negligent supervision claim "based upon conduct that is employment discrimination, but does not support a common-law tort" (quoting *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002))).

Importantly, Herren does not point to any independent conduct that would support an Alabama tort law claim committed by a La Petite employee, but instead, rests her negligent supervision claim entirely on the same conduct that she says demonstrates that she was subjected to unlawful employment discrimination. Herren does not state that her negligent supervision claim is supported by either her intentional infliction of emotional distress or invasion of privacy claims. Moreover, as discussed above, Herren has produced insufficient evidence to survive summary judgment on these claims. Accordingly, La Petite is entitled to summary judgment on Herren's negligent supervision claim.

## VI. CONCLUSION

For the reasons stated above, La Petite's motion for summary judgment (doc. 73) is due to be granted and the motion to strike (doc. 93) is due to be denied in part and terminated as moot in part. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on May 17, 2019.

_____
L. Scott Coogler
United States District Judge

194800